**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN JAE HWANG and YOUNG MI KIM,<br>    Plaintiffs,<br>           v.<br>CHARLES YOOCHUL JEON, IRA JEON, SANG JIN AHN, and W H SUSHI, INC, d/b/a WASABI HOUSE,<br>    Defendants. | Civil Action No.<br>1:19-cv-02105-SDG |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Default Judgment [ECF 28]. For the following reasons, the motion is **DENIED without prejudice**.

**I.    Background**

Plaintiffs initiated this lawsuit on May 8, 2019, alleging that Defendants violated the Fair Labor Standards Act (FLSA) and willfully filed fraudulent tax returns.[1] Defendants purportedly violated the FLSA by failing to pay Plaintiffs one and one-half times their regular rate of pay for each hour worked over 40 hours per week.[2] Plaintiff In Jae Hwang sought a total of $463,400 in damages and Plaintiff Young Mi Kim sought $394,200.[3] After mediating with a United States

---

[1]   ECF 1.

[2]   *Id.* ¶ 50.

[3]   *Id.*, Ad Damnum Clause.

Magistrate Judge, the parties agreed to resolve their dispute and filed a motion asking the Court to approve their settlement agreement (the Agreement).[4]

The Agreement provided that Defendants WH Sushi, Inc. and Charles Jeon would pay Plaintiffs a total of $60,000 for their FLSA claim, including attorneys' fees.[5] The initial amount of $10,000 was to be paid within seven days of the Court's approval of the Agreement. The remaining $50,000 was to be paid in 50 monthly installments of $1,000 each.[6] WH Sushi also provided Plaintiffs with a $50,000 security interest in its assets.[7] In exchange, Plaintiffs released all claims against WH Sushi and Charles Jeon (but not all Defendants).[8]

Finally, as relevant here, the Agreement has an event-of-default provision:

> In the event of a default, Plaintiffs will give notice to Defendants' counsel Robert Kaufman of Fox Rothschild, LLP, 999 Peachtree Street, NE, Suite 1500, Atlanta, Georgia 30309, rkaufman@foxrothschild.com and Defendants will have seven (7) days to cure the default. If the default is not cured within that time, Plaintiffs will be entitled to enter a judgment against Defendants Charles Jeon and WH Sushi, Inc., jointly and severally, in the amount of $100,000. A "default" occurs when Defendants do not make a payment and fall behind for at least one day. The Defendants will be liable for Plaintiffs' reasonably[ ]incurred attorneys' fees at the

---

[4] ECFs 20, 21, 23.

[5] ECF 36, at 8–9, ¶ 1(a).

[6] *Id.* at 9, ¶ 1(c), (d).

[7] *Id.* ¶ 1(e).

[8] *Id.* at 10, ¶ 4.

>rate of $300.00 per hour for any work necessitated by a default.[9]

The Agreement contains no provision for what should occur in the event that Kaufman's contact information changed during the payment period. In early January 2021, Kaufman left Fox Rothschild for another firm. He updated his contact information with the State Bar of Georgia and on PACER,[10] but did not provide the new information to Plaintiffs' counsel.[11]

The immediate dispute arose because Plaintiffs allege that the installment payments due in June and July 2023 were not timely paid.[12] Their counsel represents that he gave notice of an event of default on July 17, 2023.[13] The notice letter is addressed to Kaufman at his Fox Rothschild street and email addresses, and copied to WH Sushi at an address in Atlanta.[14] While the letter is attached to Plaintiffs' motion, the space for including the certified mail tracking number is

---

[9]   *Id.* at 9–10, ¶ 2.

[10]  ECF 29, at 3. While this assertion is contained in WH Sushi and Charles Jeon's opposition brief, it was not presented in a separate declaration by Kaufman. Although that would have been the best practice, in light of the fact that Kaufman himself signed the brief, the Court finds a separate declaration unnecessary under these particular facts.

[11]  ECF 30, at 2. Similar to the factual assertions in the opposition brief, Plaintiffs' factual allegations are contained in their briefs rather than a declaration.

[12]  ECF 28, at 2.

[13]  *Id.* at 2; ECF 28-1.

[14]  ECF 28-1.

blank and there is no proof of delivery (or method of delivery) in the record.[15] There is no evidence that (1) Kaufman ever received the July 17 notice letter or any other actual notice of the event of default or (2) Plaintiffs did anything to confirm that Kaufman received notice. Kaufman contends that he learned about Plaintiffs' default judgment motion because of a PACER notice sent around August 7, 2023.[16]

Through August 21, 2023, Plaintiffs had been paid approximately $50,000 of the $60,000 settlement total.[17] There is no indication in the record that WH Sushi and Charles Jeon were late making any payments other than for those due in June and July 2023 or that they are otherwise in default.

## II. Discussion

Plaintiffs move for judgment under the default provision of the Agreement. They contend that WH Sushi and Charles Jeon defaulted and Plaintiffs provided notice of the event of default as required; as a result, they are entitled to the $100,000 judgment amount.[18] WH Sushi and Charles Jeon assert that the notice did *not* comply with the Agreement, Plaintiffs have now been paid the amounts that

---

[15] *Id.*

[16] ECF 29, at 2.

[17] ECF 29-1, ¶ 10. Plaintiffs do not seem to contest this fact. *See generally* ECF 30.

[18] *See generally* ECF 28.

were delayed, and the judgment sought by Plaintiffs is an unenforceable penalty.[19] The Court only finds it necessary to address the parties' notice arguments.

### a. Applicable Law

The Settlement Agreement is governed by Georgia law.[20] The "overarching principle" Georgia applies to contract construction is to "effectuate the intent of the parties as set out in the language of the agreement." *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 189–90 (2013); *see also Walton v. Datry*, 185 Ga. App. 88, 93–94 (1987) ("The cardinal rule in the construction of contracts is to ascertain the intention of the parties."). Whether a contract is ambiguous is a question of law for the Court. *Id.* at 192; *see also Spearman v. Broker Sol'ns, Inc.*, Civ. A. No. 1:20-cv-04981-CAP, 2021 WL 2666876, at *3 (N.D. Ga. Apr. 9, 2021) (same). Only if an ambiguity remains after the Court applies the canons of construction does the matter become one for a jury. *Shepherd*, 325 Ga. App. at 192; *Walton*, 185 Ga. App. at 93.

In construing an ambiguity, the Court may consider parol evidence. O.C.G.A. § 13-2-2(1); *Shepherd*, 325 Ga. App. at 192. That is true whether the ambiguity is latent or patent. O.C.G.A. § 13-2-2(1). As the Georgia Supreme Court has explained, a latent ambiguity is one that "seems certain and without ambiguity

---

19    ECF 29; ECF 29-1, ¶ 10.

20    ECF 26, at 11, ¶ 9 (containing Georgia choice-of-law provision).

for anything that appeareth upon the deed or instrument, but there is some collateral matter, outside of the deed, that breedeth the ambiguity." *Citizens' & S. Nat'l Bank v. Clark*, 172 Ga. 625, 158 S.E. 297, 300 (1931) (quoting *Oliver v. Henderson*, 121 Ga. 836, 49 S.E. 743, 743 (1905)). In other words,

> A 'latent ambiguity' is one that does not readily appear in the language of a contract, but instead arises from a collateral matter when the contract's terms are applied or executed. A latent ambiguity arises from extraneous or collateral facts, which make the meaning of a written instrument uncertain, although its language is clear.

17A C.J.S. Contracts § 405.

Problematically for Plaintiffs' attempt to secure a default judgment, the Agreement contains both latent and patent ambiguities.

### b. The Settlement Agreement is ambiguous.

First, the Agreement is patently ambiguous as to exactly which Defendants were obligated to make the settlement payments in the first place. It defines WH Sushi and Charles Jeon, collectively, as the "Employer."[21] "Defendants" are defined as Charles Jeon, Ira Jeon, Sand Jin Ahn, and WH Sushi[22]—the named Defendants in the case. Part of the Agreement says that the total settlement amount due to Plaintiffs ($60,000) was to be paid by the *Employer*.[23] But a subsequent

---

[21] *Id.* at 8.

[22] *Id.*

[23] *Id.* ¶ 1(a).

provision states that the $50,000 balance was to be paid in installments by *Defendants*.[24] More crucially, the default provision indicates that a default occurs when *Defendants* do not timely make the installment payments and gives *Defendants* (not just the *Employer*) seven days to cure.[25] But a default only gives Plaintiffs the right to seek entry of judgment against WH Sushi and Charles Jeon, *i.e.*, the *Employer*.

Second, the notice requirement in the default provision does not contain any indication as to what should happen under the circumstances that arose here—Kaufman's departure from Fox Rothschild. Notice of default was required to be provided to "Robert Kaufman of Fox Rothschild," and the paragraph lists Fox Rothschild's street address and Kaufman's firm email address.[26] There is no provision requiring Kaufman (or anyone else) to update his contact information in the event it changed. Given that Kaufman had long-since left Fox Rothschild by the time Plaintiffs contend the event of default occurred, there was no "Robert Kaufman *of* Fox Rothschild" to whom notice could be provided consistent with the plain language of the Agreement. This is the latent ambiguity.

---

[24] *Id.* at 9, ¶ 1(d).

[25] *Id.* at 9–10, ¶ 2.

[26] *Id.*

### *i.* **Resolution of the latent ambiguity**

For immediate purposes, the Court need only resolve the latent ambiguity. In so doing, the Court applies the rules of construction. O.C.G.A. § 13-2-2 ("The following rules, among others, shall be used in arriving at the true interpretation of contracts . . . ."). Of particular relevance here is the canon that, to determine the intent of the parties, "all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred." *Flynt v. Life of the S. Ins. Co.*, 312 Ga. App. 430, 435 (2012) (citations omitted); *see also* O.C.G.A. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part.").

The unambiguous portions of the Agreement make clear that the intent of the parties was to ensure that Kaufman himself would receive actual notice of any event of default, not that the notice simply be sent to the Fox Rothschild street and email addresses. First, the default provision contains two extremely short triggers. An installment payment late by one day constitutes an event of default for which there are only seven days to cure.[27] Defendants' failure to timely cure would entitle Plaintiffs to a judgment of $100,000 plus attorneys' fees. In light of these short time

---

27   *Id.*

frames and the potential liability of failing to comply, it seems clear that the parties intended for defense counsel to receive *actual notice* of an event of default to trigger the cure period. While Plaintiffs insist they did everything they were required to do under the language of the Agreement,[28] they did not provide Kaufman actual notice of the event of default.

Second, while the Agreement does not indicate what should happen if Kaufman's contact information changed, it makes clear what was to happen if Kaufman *withdrew* from his representation of Defendants: Defendants agreed to provide their contact information to Plaintiffs' counsel for the receipt of "pleadings, motions and correspondence in this case."[29] Thus, only if Kaufman was no longer responsible for representing Defendants could providing notice of an event of default to Defendants themselves satisfy the Agreement. Defendants were not otherwise required to provide their contact information to Plaintiffs. Nor is there anything in the Agreement that required (1) Defendants or Kaufman to update Kaufman's contact information or (2) Defendants to inform Kaufman if they personally received notice of an event of default. Plaintiffs' attempt to impose

---

[28]   ECF 30, at 2.

[29]   ECF 26, at 13, ¶ 21.

this burden on Defendants[30] when it is not contained in the Settlement Agreement is improper.

In *Walker v. Wells*, the Georgia Supreme Court considered a land grant to "Berry Stephens, orphan." 25 Ga. 141 (1858). The court concluded that the grant contained a latent ambiguity because the words of the grant were plain on their face—a grant to Berry Stephens, who was an orphan. *Id.* at 142.

> But it turns out, that there was never such a person as Berry Stephens, an orphan. It must be, that some *person*, not a mere *name*, was meant. Who then was the person meant by the name? This is the necessary question. Who he was is ambiguous—doubtful.

*Id.* (emphasis in original). The court held that deposition testimony should have been admitted to "show who was the person meant by the name and description 'Berry Stephens, orphan,'" specifically that the person meant was the orphan *of* Berry Stephens. *Id.* at 141, 143.

The situation here is similar. There was no Robert Kaufman *of* Fox Rothschild to whom the notice letter could have been sent at the point when the default occurred. But Kaufman remained Defendants' counsel and did have an active—publicly available—address where he would have been able to receive

---

[30] ECF 30, at 2–3.

actual notice. The latent ambiguity in the Agreement is thus resolved by requiring that Plaintiffs provide actual notice to Kaufman of any event of default.

### c. The notice requirement is strictly construed.

Under Georgia law, "a condition precedent to a right or obligation set out in a contract must be satisfied in order for the right to accrue." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1131 (11th Cir. 2014). The notice requirement of the default provision is such a condition precedent. Strict compliance with it was therefore required. *Triad Constr. Co. v. Robert Half Int'l, Inc.*, 679 F. App'x 748, 752 (11th Cir. 2017) (per curiam) (citing *Pillar Dev., Inc. v. Fuqua Constr. Co., Inc.*, 284 Ga. App. 858, 860 (2007)); *Caradigm USA LLC v. PruittHealth, Inc.*, Civ. A. No. 1:15-CV-2504-SCJ, 2017 WL 2335648, at *12 (N.D. Ga. May 30, 2017) (same). As construed by the Court to remove the ambiguity, the Agreement required that Plaintiffs provide actual written notice to Kaufman in order to satisfy the condition precedent to the judgment they seek.[31] Plaintiffs did not do so.

The parties could have avoided this dispute by including in the Agreement a requirement that Kaufman's contact information be kept up to date. Kaufman himself could have provided his new contact information to Plaintiffs' counsel.

---

[31] ECF 26, at 9–10, ¶ 2. Neither side argues that the Agreement did not require written notice. Even if Plaintiffs were only required to substantially (rather than strictly) comply with the notice requirement, *Triad Constr.*, 679 F. App'x at 752, they didn't do that either. They made no effort to confirm that their notice letter was delivered to Kaufman or to provide him oral notice.

But even if he had done so, the tenor of Plaintiffs' briefing suggests they would have insisted on sending notice to Fox Rothschild anyway so they could claim compliance, obtain a judgment that may work as a penalty, and their counsel could seek recovery of the attendant fees. Especially in light of the fact that Plaintiffs apparently received the payments-in-default within seven days of filing suit and no other payments have been late, the Court agrees with Defendants that Plaintiffs' (or their counsel's) "attempt at a 'gotcha' moment" is improper.

### III. Conclusion

Plaintiffs' Motion for Default Judgment [ECF 28] is **DENIED without prejudice**. Should an event of default occur in the future, notice must be sent to Robert Kaufman, at Chalmers, Adams & Kaufman, LLC, 5805 State Bridge Rd., Suite #G77, Johns Creek, Georgia 30097 and rkaufman@chalmersadams.com. Should that contact information change before the end of the installment payment period, Kaufman is **DIRECTED** to provide updated information to Plaintiffs' counsel within seven days of the change.

**SO ORDERED** this 29th day of March, 2024.

Steven D. Grimberg
United States District Judge